**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| YADIRA MELENDEZ, ) | |
| ) | CASE NO.    1:13-01720 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Yadira Melendez ("Melendez") challenges the final decision of the Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Melendez's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and the case REMANDED.

**I.  Procedural History**

On December 16, 2010, Melendez filed an application for SSI alleging a disability onset date of December 30, 2008, claiming she was disabled due to hip dysplasia and major depression.[1]  (Tr. 121, 269)  Her application was denied both initially and upon reconsideration. (Tr. 91.)

---

[1] Melendez previously filed an application for SSI benefits on January 21, 2009, which was denied on March 12, 2010.  (Tr. 91.)  Pursuant to the doctrine of *res judicata*, the ALJ's decision only addressed the unadjudicated time period commencing March 13, 2010. *Id*.

On April 19, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Melendez, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 91.) On April 24, 2012, the ALJ found Melendez was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 96-97.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age twenty-seven (27) at the time of her administrative hearing, Melendez is a "younger person" under social security regulations. *See* 20 C.F.R. § 416.963(c). Melendez dropped out of school in Puerto Rico during her final year of high school. She has past relevant work as a housekeeper/cleaner. (Tr. 270.) She is unable to communicate in English. (Tr. 96.)

*Relevant Hearing Testimony*

At the hearing, with the assistance of a Spanish translator, Melendez testified to the following:

- She attended high school in Puerto Rico, but dropped out in her final year. (Tr. 28.) She can read and write in Spanish. (Tr. 31.)

- She worked as a hotel cleaner, but stopped working due to back and leg pain. (Tr. 29)

- Back pain limits her to about half an hour of standing. (Tr. 29.) She does not use a cane. (Tr. 29-30.) She experiences back pain while sitting. (Tr. 31.) She did not know how much weight she could lift. *Id*.

- She takes Ibuprofen for her pain. It helps but her pain returns. She has no side effects from the medication. (Tr. 30.)

- Physicians have recommended that she undergo surgery to correct her hip dysplasia, but she wanted to wait until her five year old daughter was older when she could care for herself. *Id.*

- Her pain intensifies when she is walking or laying down. The pain makes it difficult for her to sleep. (Tr. 31, 34.)

- She cooks, cares for her daughter, cleans the house, shops for groceries, and does the laundry. (Tr. 35-36.) When performing chores, she needs to take a break after thirty minutes and sit or lay down for about an hour. (Tr. 38.)

The ALJ posed the following hypothetical question to the VE:

I'm going to ask you to assume an individual who is 27 years old, has

2

>completed 12 years of education in Puerto Rico, does not have a high school education, does not speak or read English but does speak and read Spanish.
>
>Assume further this individual has the past work to which you testified [maid/housekeeper/cleaner] and that she has a residual functional capacity to perform sedentary work as defined in the regulations but with the additional limitations that she cannot perform crouching or climbing of ladders, ropes, or scaffolds.... And can perform occasional balancing, stooping, kneeling, crawling, and climbing of ramps and stairs.

(Tr. 41.) The VE testified such an individual could not perform Melendez's past relevant work. *Id*. However, the VE identified the following as representative examples of jobs such an individual could perform: Small Product Assembler I, Dictionary of Occupational Titles ("DOT") § 706.684-022; Assembler II, DOT § 723.684-018; and, Electrical Accessories Assembler I, DOT § 729.687-010. (Tr. 41-43.)

The ALJ then posed a second hypothetical, adding the limitation that, due to symptoms from medically determinable impairments, the individual would be off task twenty (20) percent of the time. (Tr. 43.) The VE testified that no jobs would be available for such an individual. *Id.*

Next, Melendez's attorney added to the ALJ's first hypothetical that the individual would need to be able to lay down one to two times per average work day for approximately thirty (30) minutes in addition to regularly scheduled breaks. (Tr. 44.) The VE testified such a person would be unemployable. *Id*. Melendez's attorney then added to the ALJ's first hypothetical that the individual would require a sit/stand option as well as the ability to walk around a bit while standing to relieve pain and other symptoms. *Id*. The VE again testified that no jobs would be available. *Id*. Finally, Melendez's attorney posed a third hypothetical adding that the person would be limited to standing and walking two hours out of a regular eight hour work day and sitting for two hours out of an eight hour day. *Id*. The VE testified that such an individual "would not fulfill the sedentary level of work of the DOT and therefore would not be competitive work in the labor market as it's acceptable." *Id*.

### III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant

must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

The ALJ found Melendez established a medically determinable, severe impairment, due to left hip dysplasia with chronic dislocation; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 93-94.)  Melendez was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work.  (Tr. 94, 96.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Melendez was not disabled.  (Tr. 97.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined

as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260

(E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

In her only assignment of error, Melendez argues that the ALJ failed to properly evaluate the medical opinion of her treating physician, Dr. Gillespie.  (ECF No. 17 at 8-12.)  She maintains the ALJ failed to articulate "good reasons" for only affording "some weight" to his opinion.  *Id*. at 10.  Specifically, Melendez argues the ALJ failed to cite any specific evidence regarding how her daily activities were inconsistent with Dr. Gillespie's opinion.  *Id*.  She also emphasizes that the ALJ did not mention any of the factors set forth in 20 C.F.R. § 416.927.  (ECF No. 17 at 11.)  Consequently, this failure to follow agency rules and regulations resulted in a lack of substantial evidence supporting the decision. *Id*.  Conversely, the Commissioner argues the ALJ did not err by ascribing only some weight to Dr. Gillespie's opinion, because it was not supported by the record as a whole.  (ECF No. 18 at 11.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 416.927(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[2]

---

[2] Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).  According to 20 C.F.R. § 416.927(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On October 14, 2011, Dr. Gillespie completed a medical source statement regarding Melendez's functional limitations.  Dr. Gillespie stated Melendez could lift/carry twenty pounds occasionally and ten pounds frequently, sit for two hours in an eight hour work day in thirty minute increments, and stand/walk for two hours in fifteen minute increments.  (Tr. 507.)  He indicated that Melendez could rarely or never climb, stoop, crouch, kneel, or crawl, but could occasionally balance and push/pull.  *Id*.  Dr. Gillespie added Melendez would require additional

---

record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

rest periods beyond regularly scheduled breaks and would require an at-will sit/stand option. (Tr. 508.) Dr. Gillespie cited chronic dislocation of Melendez's left hip as the basis for these restrictions. (Tr. 507-508.)

After summarizing Dr. Gillespie's October 2011 opinion, the ALJ found that "[w]hile this assessment is inconsistent with several of the claimant['s] activities, such as shopping, cleaning, cooking, and caring for her daughter, it does support several of the limitations contained within the [RFC]."[3] (Tr. 96.) As a result, only "some weight" was ascribed to Dr. Gillespie's opinion. (Tr. 95.)

After correctly identifying Dr. Gillespie as Melendez's treating physician, the ALJ failed to provide good reasons for rejecting a significant number of the functional limitations he assessed. The only reason offered by the ALJ for rejecting material portions of Dr. Gillespie's assessment was the conclusory statement that it was allegedly inconsistent with Melendez's daily activities, specifically her shopping, cleaning, cooking, and child care for her daughter. (Tr. 96.) The decision fails to offer an adequate explanation of how these activities, some or perhaps most of which are not performed on a daily basis, are inconsistent with the limitations assessed by Dr. Gillespie. The decision is especially troubling in light of the fact that the ALJ appears to be relying on Melendez's self-reporting of her activities, but omits any discussion of Melendez's statements and testimony that these activities are performed only for a few hours each day with frequent breaks. (Tr. 35-36, 38-39, 249-252, 282-284.) For example, in her Function Report completed for the Social Security Administration (SSA), Melendez explained that while she prepares three simple meals a day, she rests throughout the cooking process.[4] (Tr. 282) She also stated that while she performs a number of cleaning activities, she does so "over a long period of

---

[3] Specifically, the RFC could be construed as incorporating the following portions of Dr. Gillespie's opinion: that Melendez could occasionally balance; that she could never crouch or climb ladders, ropes, or scaffolds; and, that she could frequently lift ten pounds. (Tr. 94.) Implicitly, the ALJ rejected remainder of Dr. Gillespie's assessment. (Tr. 94-96.)

[4] She also states that it takes her fifteen minutes to an hour. (Tr. 282.) It is unclear if this refers to each meal or is an aggregate estimate for all three meals.

8

time ... daily or every other day for a few hours w/ many rests/breaks." (Tr. 283.) At times, she indicated her mother helps her finish tasks when she is in too much pain. *Id*. Melendez also recounted that she only shops for groceries once per month, and it normally takes her two to three hours in light of the frequent breaks she has to take. *Id*. In another form, Melendez indicated that her household chores take her five hours to complete and are performed twice a week. (Tr. 250.) During the hearing, Melendez stated that she would perform chores for half an hour and then need to sit or lie down for an hour. (Tr. 38-39.)

The ALJ was not required to find Melendez's statements about her activities credible. Indeed, he found her allegations as to her symptoms not credible to the extent they were inconsistent with the RFC. (Tr. 95.) Nonetheless, to the extent the ALJ relies solely on a claimant's self-reported daily activities to discredit the medical opinion of her treating physician, the recitation of said activities should, at the very least, be thorough and accurate. The mere fact that Melendez is able to perform the activities discussed in the paragraph above *in spite of* her alleged disabling hip pain is not necessarily indicative of an ability to perform substantial gainful activity. *See, e.g. Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of pain suffered by [claimant]."); *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) ("It was not necessary that [the claimant] be bedridden or wholly helpless in order to establish his claim for benefits." Melendez did not describe her activities as continuous. While a claimant's activities may justify rejecting the opinion of a treating source under certain circumstances, the ALJ herein failed to accurately recount Melendez's daily activities and explain how they were inconsistent with Dr. Gillespie's assessment. Absent such explanation, this Court cannot affirm the ALJ's decision.[5]

---

[5] Furthermore, in assessing the weight he accorded Dr. Gillespie's opinion, the ALJ failed to discuss any of the factors prescribed in 20 C.F.R. 416.927(c)(2).

9

The Commissioner's brief points to other evidence of record to justify the ALJ's rejection of Dr. Gillespie's opinion, including the September 26, 2007 opinion of Fredrick Oldenburg, M.D., an orthopedic specialist, that Melendez had "no activity restrictions." (ECF No. 18 at 12.) However, the ALJ's decision fails to mention Dr. Oldenburg. (Tr. 91-98.) Thus, the Commissioner's argument regarding the orthopedic specialist's opinion cannot be considered by this Court, as it constitutes *post hoc* rationale, and a reviewing court cannot use a Commissioner's brief to bolster the ALJ's decision with evidence and arguments never raised by the ALJ. *See, e.g., Bable v. Astrue,* 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater,* 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).

The Commissioner also references the opinion of non-treating consultative examiner Eulogio Sioson, M.D., to which the ALJ ascribed "some weight," and the opinions of non-examining state agency physicians Gerald Klyop, M.D., and Gary Hinzman, M.D., to which the ALJ ascribed "great weight." (ECF No. 18 at 12-13, citing Tr. 68-69, 81-82, 95-96, 413.) The Commissioner asserts the opinions of Drs. Klyop and Hinzman were entitled to great weight, because they are highly qualified practitioners who are experts in Social Security disability evaluation under the law. *Id.* However, these opinions do not constitute "good reasons" for rejecting a treating physician's opinion.[6] This Court has previously noted that an ALJ cannot base his or her rejection of a treating physician's opinion upon its inconsistency with the opinions of non-treating physicians. *See Brewer v. Astrue*, 2011 WL 2461341 at *7 (N.D. Ohio Jun. 17, 2011) ("[T]he ALJ cannot base his rejection of [a treating physician's] opinion upon its inconsistency with the opinions of non-examining State Agency consultants. To do so would turn the treating physician rule on its head. It is well established that the opinions of non-examining physicians

---

[6] The Court also notes that despite assigning "great weight" to Dr. Klyop's opinion, the RFC did not account for Dr. Klyop's observation that Melendez would need to alternate positions for two to three minutes every hour. (Tr. 69.)

carry little weight when they are contrary to the opinion of a treating physician.") (*citing Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians"); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th 2013) ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when other sources agreed with that opinion."). Hence, inconsistencies with the opinions of Drs. Klyop and Hinzman do not provide an adequate basis for implicitly rejecting Dr. Gillespie's opinion.

Accordingly, the ALJ failed to provide good reasons for rejecting significant portions of Dr. Gillespie's assessment of Melendez's functional limitations. The Court, therefore, recommends this matter be remanded to afford the ALJ an opportunity to sufficiently evaluate and explain the weight ascribed to the limitations assessed by Dr. Gillespie and any other treating source.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be VACATED and the case REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this Report and Recommendation.

s/ Greg White  
United States Magistrate Judge

Date: June 11, 2014

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).